**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
CHARLES ANEKE, ET AL.          )
                               )
        Plaintiffs,            )
                               )
    v.                         )
                               )
AMERICAN EXPRESS TRAVEL        )  Civil Action No. 11-1008(GK)
RELATED SERVICES, INC., ET AL. )
                               )
        Defendants.            )
                               )
_____)

**MEMORANDUM OPINION**

Plaintiffs, Charles Aneke, Rebecca Fasten, Christopher Addison, and Tolu Tolu, bring a class action suit against Defendants American Express Travel Related Services Company, Inc. ("American Express Travel"), American Express Company, American Express Centurion Bank ("Centurion Bank"), and American Express Bank, FSB, ("Defendants" or "American Express") for violations of the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. § 3401 et seq.

This case is presently before the Court on Plaintiffs' Motion for an Order Invalidating the "Restrictions on Arbitration" Subsection of the American Express Cardmember Agreement("Plaintiffs' Motion to Invalidate the Arbitration Restrictions" or "Pls. Mot.") [Dkt. No. 29] and Defendants' Motion to Compel Arbitration and Stay the Action ("Defendants' Motion to Compel Arbitration" or "Defs. Mot.") [Dkt. No. 32]. Upon

consideration of the Motions, Oppositions, Replies, and the entire record herein, and for the reasons set forth below, Plaintiffs' Motion is **denied** and Defendants' Motion is **granted.**

## I. BACKGROUND

Plaintiffs are U.S. residents who hold credit card accounts, as either primary or additional users,[1] with Defendants.[2] Plaintiffs' First Amended Complaint ¶¶ 1-5 ("FAC") [Dkt. No. 8]. As part of their customer service, Defendants have established a network of call/data centers, which give card holders direct access to American Express personnel. Id. ¶ 28. In connection with this system, Defendants have created an information network that allows American Express personnel to access callers' financial records, which Defendants have collected and stored. Id. ¶¶ 24-26, 29. In

---

[1] Plaintiff Charles Aneke is a primary account holder, who originally opened a credit card account with American Express in January 2008. Declaration of Paul V. Carey in Support of Defendants' Motion to Compel Arbitration and Stay Action ¶ 5 ("Carey Decl.") [Dkt. No. 33]. Plaintiff Christopher Addison is also a primary account holder, who opened an account with American Express in 1992. Id. ¶ 7. Plaintiffs Rebecca Fasten and Tolu Tolu are additional cardmembers on credit card accounts opened by other customers who are primary cardmembers, but who are not named plaintiffs in this action. Id. ¶¶ 8, 10.

[2] Defendant American Express Travel is a New York-based bank holding company and is a wholly owned subsidiary of Defendant American Express Company, also a New York-based bank holding company. Id. ¶¶ 10-11. Defendant Centurion Bank is a Utah corporation and a wholly owned subsidiary of American Express Travel, and issues charge cards and credit cards to persons and/or business entities. Id. ¶ 12. American Express Bank, FSB is a federal savings bank and card issuer with offices in New York and Utah, and is a wholly owned subsidiary of Centurion Bank. Id. ¶ 13.

the past, American Express call centers have been located primarily in the United States. Id. ¶ 30. However, over time, Defendants have expanded their network to include call centers located overseas and staffed predominantly by foreign nationals. Id.

Plaintiffs allege that, in violation of the RFPA, Defendants transmitted Plaintiffs' personal financial information to Defendants' overseas call/data centers without either obtaining Plaintiffs' permission, or notifying Plaintiffs of the impact these transfers might have on their legal rights. Id. ¶¶ 53-57. Customers typically access the customer service call centers, whether located overseas or in the United States, through U.S. telephone numbers provided by American Express. FAC ¶¶ 32-33. American Express does not, however, notify its customers that calls placed to these U.S. numbers may be handled by personnel located overseas. Id.

Plaintiffs allege that because financial information received and sent by the overseas call centers is not subject to U.S. laws, the United States Government is free to intercept, search, and seize this data. Id. ¶ 40. Plaintiffs also allege that, upon information and belief, the U.S. Government has either seized their financial information or that such information is at risk of Government seizure. Id. ¶¶ 42-47,60. Plaintiffs also allege that their financial information may have been seized by certain foreign

-3-

governments, which regularly share such data with the United States. Id. ¶¶ 48-51, 61-62.

Plaintiffs bring their claims as a class action suit on behalf of "[all] U.S.-based American Express customers whose financial records have been electronically transferred from the United States to foreign nationals residing overseas." FAC ¶ 7. Defendants seek to stay the litigation and have Plaintiffs' claims arbitrated pursuant to the Arbitration Provision in their Cardmember Agreements with Defendants ("Cardmember Agreement").[3]

Under the Arbitration Provision in those Agreements, "[a]ny claim shall be resolved upon the election by [the cardmember] or [American Express], by arbitration pursuant to this Arbitration provision . . . ." Cardmember Agreement of Plaintiff Charles Aneke, Ex. A to Carey Decl., 10 ("Aneke Cardmember Agreement") [Dkt. No. 33-1].[4] Plaintiffs concede that this Provision applies to their

---

[3]  Plaintiffs are each subject to separate Cardmember Agreements with Defendants. However, for purposes of the instant dispute, the terms of these Agreements do not differ in any material respect. For the sake of convenience, reference shall be made only to Plaintiff Charles Aneke's Cardmember Agreement.

[4] The term "claim" is defined as

> [A]ny claim, dispute or controversy between you and us arising from or relating to your Account, this Agreement, the Electronic Funds Transfer Services Agreement, and any other related or prior agreement that you may have had with us, or the relationships resulting from any of the above agreements, except for the validity, enforceabiltiy, or scope of this Arbitration provision."

(continued...)

claims against Defendants. Pls. Opp'n 1-3. As detailed in the Cardmember Agreement, the Arbitration Provision, when invoked, prohibits cardmembers from participating in any court action, including a class action law suit, or in any arbitration in a representative capacity or as a member of any class of claimants:

**Significance of Arbitration[5]**

IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM. FURTHER, YOU AND WE WILL NOT HAVE THE RIGHT TO PARTICIPATE IN A REPRESENTATIVE CAPACITY OR AS A MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION. EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. NOTE THAT OTHER RIGHTS THAT YOU OR WE WOULD HAVE IF YOU WENT TO COURT ALSO MAY NOT BE AVAILABLE IN ARBITRATION.

**Restrictions on Arbitration**

IF EITHER PARTY ELECTS TO RESOLVE A CLAIM BY ARBITRATION, THAT CLAIM SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS. THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED ON A CLASS ACTION BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC, OTHER CARDMEMBERS OR OTHER PERSONS SIMILARLY SITUATED. The arbitrator's authority to resolve claims is limited to claims between you and us alone, and the arbitrator's authority to make awards is limited to awards to you and us alone. Furthermore, claims brought by you against us, or by us against you, may not be joined or consolidated in arbitration with claims brought by or against someone other than you, unless agreed to in writing by all parties. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone

_____

[4](...continued)
Ex. A to Carey Decl., 10 [emphasis in original].

[5] All capitalization in the following sections has been taken directly from the Cardmember Agreement.

who is not a named party to the arbitration. Notwithstanding any other provision in this Agreement (including but not limited to the Continuation subsection below) and without waiving either party's right to appeal such decision, should any portion of this Restrictions on Arbitration subsection be deemed invalid or unenforceable, then the entire Arbitration provision (other than this sentence) shall not apply.

Id.

On May 31, 2011, Plaintiffs filed their Complaint, which they subsequently amended on August 1, 2011. On October 10, 2011,[6] Plaintiffs filed a Motion to Invalidate the Restrictions on Arbitration Subsection of the American Express Cardmember Agreement.[7] On October 14, 2011, Defendants filed a Motion to Compel Arbitration and Stay the Action. On October 27, 2011, Defendants filed an Opposition to Plaintiffs' Motion for an Order Invalidating the "Restrictions on Arbitration" Subsection of the American Express Cardmember Agreement [Dkt. No. 37]. On November 7, 2011, Plaintiffs filed an Opposition to Defendants' Motion to Compel Arbitration and Stay the Action [Dkt. No. 45], and a Reply to Defendants' Opposition to Plaintiffs' Motion for an Order Invalidating the "Restrictions on Arbitration" Subsection of the American Express Cardmember Agreement [Dkt. No. 46]. On November

[6] On October 11, 2011, Plaintiffs filed an Errata notice, substituting their original Motion with a revised version. All references to Plaintiffs' Motion are to the revised version.

[7] Plaintiffs' Motion also included a request to certify the lawsuit as a class action. Pursuant to the Court's October 18, 2011 Order, Plaintiffs' motion to certify a class has been stayed pending resolution of the arbitration issue.

17, 2011, Defendants filed a Reply in Further Support of the Motion to Compel Arbitration and Stay the Action [Dkt. No. 50].

## II. Statutory Framework

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., governs the enforcement of contractual arbitration provisions, such as the one in issue in this case,[8] which pertain to matters of interstate commerce. Compucredit Corp v. Greenwood, No. 10-948, 2012 WL 43514, at * 3 (U.S. Jan. 10, 2012). "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." At&T Mobility, LLC, v. Concepcion, __ U.S. __, 131 S. Ct. 1740, 1748 (2011)

Pursuant to Section 2 of the FAA,

A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or equity for the revocation of any contract.

9 U.S.C. § 2. As the Supreme Court has repeatedly held, this provision "establishes 'a liberal federal policy favoring

---

[8] The Arbitration Provision states that it is "made pursuant to transactions involving interstate commerce and shall be governed by the FAA." Ex. A to Casey Decl., 10.  There is no dispute that the transactions involved in this case involve matters of interstate commerce.

arbitration agreements.'" <u>Compucredit Corp.</u>, 2012 WL 43514, at *3 (quoting <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24, 103 S. Ct. 927 (1983)), and reflects the "'fundamental principle that arbitration is a matter of contract.'" <u>Concepcion</u>, 131 S. Ct. at 1745 (quoting <u>Rent-A-Center, West, Inc. v. Jackson</u>, __ U.S. __, 130 S. Ct. 2772, 2776 (2010)).

Thus, "courts must place arbitration agreements on an equal footing with other contracts," <u>id.</u> at 1745-46 (citations omitted), and "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." <u>Moses H. Cone Mem'l Hosp.</u>, 460 U.S. at 24-25. This is the case "even when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overriden by a contrary congressional command.'" <u>Compucredit Corp.</u>, 2012 WL 43514, at *3 (quoting <u>Shearson/Am. Express Inc. v. McMahon</u>, 482 U.S. 220, 226, 107 S. Ct. 2332 (1987)).

## III. Analysis

### A. Procedural Arguments

Defendants raise several procedural arguments to rebut Plaintiffs' claims.

First, Defendants challenge Plaintiffs' claim that the Arbitration Provision cannot be enforced under the FAA because it violates the D.C. Consumer Protection Procedures Act ("DCCPPA"),

D.C. Code § 28-3904 <u>et seq.</u>[9] Defendants argue that Plaintiffs lack standing to raise this claim. Defs. Opp'n 8; Defs. Reply 7.

Under Article III of the U.S. Constitution, federal courts have jurisdiction to hear only those cases or controversies that are justiciable. As the Supreme Court has held, standing is central to determining if a case or controversy meets this requirement.

In <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 112 S. Ct. 2130 (1992), the Supreme Court set out the three elements a plaintiff must establish in order to have standing. First, plaintiff must have suffered "an 'injury in fact' - an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural' or hypothetical." <u>Id.</u> (citations omitted). Second, there must be a "casual connection between the injury and the conduct complained of - the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." <u>Id.</u> (citation and internal quotations omitted). Third, it must be "'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." <u>Id.</u> at 561 (citation omitted).

_____

[9] Plaintiffs argue that the Arbitration Provision violates the DCCPPA because it "ban[s] a District of Columbia resident from assuming the quasi-governmental, quasi-police powers of a private attorney general." Pls. Mot. 13.

In their Motion to Invalidate the Arbitration Restrictions and Opposition to Defendants' Motion to Compel Arbitration, Plaintiffs challenge the enforceability of the Arbitration Provision under the FAA. Because of this Arbitration Provision, Plaintiffs claim to have suffered an injury in fact, namely the inability to bring a class action claim.[10] This alleged injury is directly connected to the Arbitration Provision, which bars class action arbitrations and prohibits cardmembers from participating in class litigation subsequent to arbitration. Plaintiffs seek both declaratory and injunctive relief as a remedy. FAC ¶¶ 22.7-22.17, 70-73.4. If the Court were to hold the Arbitration Provision to be unenforceable and grant the requested relief, Plaintiffs' injury would be redressed. Thus, Plaintiffs satisfy the <u>Lujan</u> requirements and have standing to challenge the enforceability of the Arbitration Provision under the FAA.[11]

---

[10]  Although Defendants had not yet sought arbitration when Plaintiffs filed their Motion, they did so only four days later in their Motion to Compel Arbitration.

[11] Defendants' argument that Plaintiffs lack standing to challenge the Arbitration Provision under the DCCPPA mischaracterizes the standing inquiry. The standing doctrine concerns the justiciability of cases, not the arguments raised to support a plaintiff's cause of action. Here, the underlying case or controversy is whether the Arbitration Provision should be enforced under the FAA. The DCCPPA is simply one argument Plaintiffs use to challenge such enforcement.
  Because Plaintiffs have presented a valid case or controversy under Article III, Defendants are also incorrect that Plaintiffs' DCCPPA argument constitutes a request for an advisory opinion. Defs. Opp'n 9. <u>See</u> <u>U.S. Nat'l Bank of Oregon v. Independent Ins.</u>
(continued...)

Second, Defendants argue that Plaintiffs' Motion was procedurally improper because their FAC did not seek a declaratory judgment regarding the enforceability of the Arbitration Provision. Defs. Opp'n 7. While it is true that Plaintiffs' FAC does not contain a specific request for a declaratory judgement, it does allege that the Arbitration Provision is invalid and unenforceable. FAC ¶¶ 22.7-22.17. Under the notice pleading requirements of FED. R. CIV. P. 8, such pleadings are sufficient to support a declaratory judgment request. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007) ("Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.").

Third, Defendants argue that Plaintiffs' Motion is barred by the FAA. However, contrary to Defendants' claim, the FAA only addresses motions to compel arbitration, 9 U.S.C. § 4., and does not contain any prohibition on motions to invalidate a contractual arbitration clause.

---

[11](...continued)
Agents of Am., Inc., 508 U.S. 439, 446, 133 S. Ct. 2173 (holding that a court renders an advisory opinion when there is no justiciable case or controversy under Article III).

**B. Substantive Arguments**

In determining whether an arbitration provision is valid under the FAA, courts must engage in a two-part inquiry. <u>Stromberg Sheet Metal Works, Inc., v. Wash. Gas Energy Sys.</u>, 448 F. Supp. 2d 64, 68 (D.D.C. 2006) (citing <u>Nelson v. Insignia/ESG, Inc.</u>, 215 F. Supp. 2d 143, 146 (D.D.C. 2002)). First, the court "must decide whether the parties entered into a valid and enforceable arbitration agreement." <u>Id.</u> (citing <u>Nur v. K.F.C. USA, Inc.</u>, 142 F. Supp. 2d 48, 50-51 (D.D.C. 2001)). Second, the court must "determine whether the arbitration agreement encompasses the claims raised in the complaint." <u>Id.</u>  The party opposing arbitration bears the burden of demonstrating that the arbitration provision is invalid and unenforceable. <u>Green Tree Fin. Corp. - Ala. v. Randolph</u>, 531 U.S. 79, 91-92, 121 S. Ct. 513 (2000).

The parties' dispute centers on the first prong of this analysis, namely whether the Arbitration Provision is valid and enforceable.

### 1. D.C. v. Utah Law

Plaintiffs argue that the Arbitration Provision is unenforceable because it is illegal under D.C. law. Pls. Mot. 3-21. Defendants respond that Utah, and not D.C. law, governs the enforceability of the Arbitration Provision, and that the Provision is valid and enforceable under Utah's statutes and caselaw. Defs. Mot. 13-16; Defs. Opp'n 8 n. 5.

In deciding whether an arbitration agreement is valid, courts apply "ordinary state-law principles that govern the formation of contracts." <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944, 115 S. Ct. 1920 (1995). To determine the applicable state law in a FAA case, federal courts use the conflict of law principles applied by the state in which they sit. See <u>Gay v. Creditform</u>, 511 F.3d 369, 389 (3d Cir. 2007) (FAA case in which appellate court applied Pennsylvania conflict of law rule because district court was located in Pennsylvania).

The District of Columbia Court of Appeals "has adopted the general rule that parties to a contract may specify the law they wish to govern, as part of their freedom to contract, as long as there is some reasonable relationship with the state specified."[11] <u>Ekstrom v. Value Health, Inc.</u>, 68 F.3d 1391, 1394 (D.C. Cir. 1995) (citation and internal quotations omitted). Such a reasonable relationship exists where one of the parties to the contract is based in the specified state. See <u>Whiting v. AARP</u>, 637 F.3d 355,

---

[11] To support their claim that D.C. law applies to the Cardmember Agreement, Plaintiffs cite to another D.C. conflict of law principle in which courts "evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case under review." Pls. Opp'n (citing to <u>Hercules & Co. v. Shama Rest. Corp.</u>, 566 A.2d 31 (D.C. 1989)). Plaintiffs have failed to point to any authority applying this D.C. conflict of law principle to contracts containing an express choice of law provision. This is unsurprising, as D.C. courts clearly honor express contractual choice of law provisions under the circumstances noted above.

361 (D.C. Cir. 2011) (enforcing contract's D.C. choice of law provision where party to contract was based in the District of Columbia).

The Cardmember Agreement contains an express choice of law provision selecting Utah law to govern the contract. See Aneke Cardmember Agreement ("Utah law and federal law govern this Agreement and your Account."). As a number of Defendants are headquartered in Utah, this choice of law provision is valid and Utah law, therefore, determines the Arbitration Provisions' enforceability.

Under Utah law, a credit agreement is binding and enforceable if:

> (i) the debtor is provided with a written copy of the terms of the agreement; (ii) the agreement provides that any use of the credit offered shall constitute acceptance of those terms; and (iii) after the debtor receives the agreement, the debtor, or a person authorized by the debtor, requests funds pursuant to the credit agreement or otherwise uses the credit offered.

UTAH CODE ANN. § 25-5-4(2)(e). Utah law also permits the inclusion of class-action waivers in consumer credit agreements. See UTAH CODE ANN. § 70(C)-4-105 ("[A] creditor may contract with the debtor of an open-end consumer credit contract for a waiver by the debtor of the right to initiate or participate in a class action related to the open-end consumer credit contract.").

As Defendants accurately point out, a number of courts have found the Arbitration Provision to be valid and enforceable under

Utah law. See, e.g., Miller v. Corinthian Colleges, Inc., 769 F. Supp. 2d 1336, 1333-49 (D. Utah 2011) (holding that both American Express arbitration agreement itself and its class action waiver were enforceable under Utah law); Wynne v. American Express Co., No. 2:09-CV-00260, slip op., 2010 WL 3860362, at *7-9 (E.D. Tex. Sept. 30, 2010) (holding class action waiver in American Express arbitration provision to be enforceable under Utah law). Plaintiffs have neither distinguished this legal precedent nor otherwise argued that Utah law requires invalidating the Arbitration Provision involved in this case.

For these reasons, the Court concludes that the Arbitration Provision is valid and enforceable under Utah law, which is the relevant state law in this case.[12]

### 2.   The FAA v. RFPA

Plaintiffs argue that, by preventing them from obtaining class-wide injunctive relief, the Arbitration Provision is unenforceable because it conflicts with the purpose of RFPA.[13] Pls.

---

[12] Because Utah law applies to this case, there is no cause to consider Plaintiffs' argument that the Arbitration Provision is unenforceable under the DCCPPA.

[13] Plaintiffs also claim that they "cannot yet make a good faith argument with respect to the expense of arbitration because Plaintiffs do not know whether expert testimony will be required." Pls. Opp'n 25. Under Supreme Court precedent, the existence of "large arbitration costs" may be grounds for holding that an arbitration provision containing a class-action waiver conflicts with a claimant's federal statutory rights. Randolph, 531 U.S. at 90. However, where "a party seeks to invalidate an arbitration

(continued...)

Mot. 21-25. Defendants respond that class wide injunctive relief is neither mandated by the RFPA nor necessary to fulfill the statute's purpose. Defs. Opp'n 18-24.

As the Supreme Court has held, claims based on federal statutes are no exception to the general rule that arbitration agreements should be enforced according to their terms. See Mitsubishi Motors Corp., v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S. Ct. 3346 (1985) (holding that claims based on federal statutes may be subject to arbitration). Although all statutory claims "may not be appropriate for arbitration, having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude waiver of judicial remedies for the statutory rights at issue." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S. Ct. 1647 (1991). If such Congressional intent exists, "it will be discoverable in the text of the [statute], its legislative history, or an 'inherent conflict' between arbitration and the statute's underlying purpose." Id.

---

[13](...continued)
agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." Id. at 92. "The 'risk' that [the party] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." Id. at 91. To the extent Plaintiffs have alleged that the costs of individual arbitration may be exorbitant, they have presented no evidence whatsoever and, therefore, have failed to sustain their burden to prove this claim.

RFPA prohibits financial institutions from providing the Government with information concerning a customer's financial records, unless the customer authorized the disclosure of the information or the Government obtained a valid warrant or subpoena. 12 U.S.C. § 3402. At the time of its passage, RFPA "fill[ed] the void in . . . Federal law regarding statutory protection against unrestricted access to third-party records" and "represented a compromise between a bank customer's right to financial privacy and the need of law enforcement agencies to obtain financial records pursuant to legitimate investigations." United States v. Frazin, 780 F.2d 1461, 1465 (9th Cir. 1986).

Under RFPA, any agency or department of the United Sates or financial institution that violates its provisions is liable for civil penalties. 12 U.S.C. § 3417. In addition, as Plaintiffs correctly point out, RFPA also permits parties to seek injunctive relief for statutory violations. 12 U.S.C. § 3418.

Plaintiffs do not dispute that, under the Arbitration Provision, they may individually pursue RFPA's civil and injunctive remedies in arbitration proceedings. Most significantly, they have failed to point to any language in RFPA, its legislative history, or case law suggesting that class-wide injunctive relief is mandated by or necessary to carry out RFPA's purpose. In short, Plaintiffs have presented no legal authority suggesting that RFPA precludes enforcement of the Arbitration Provision.

Plaintiffs' remaining arguments rest on the presumption that "piecemeal, one-off,[14] non-binding outcomes  . . . . cannot provide meaningful relief to Cardmembers - relief that is consistent with the federal government's charge to safeguard interstate commerce."[15] Pls. Mot. 21. The Supreme Court has made it clear, however, that

---

[14]  Plaintiffs appear to use the term "one-off" to describe individual, as opposed to class-wide, arbitration, although they never define the term.

[15] In particular, Plaintiffs argue that

> Given the global configuration of American Express' procedures, Plaintiffs cannot envision one-off arbitral relief that will ensure compliance with the RFPA with respect to the RFPA-indicated [sic] individual Cardmember. Without a categorical change of its procedures how can American Express ensure compliance with the RFPA with respect to a single individual when that Cardmember makes a phone call to American Express from a public pay phone? Or makes a phone call to American Express from a phone number not identified as hers? Or executes an online transaction using the computer at a public library? Or executes an online transaction with American Express using a computer in another state? Plaintiffs posit that such compliance is impossible. Even if it were possible for the individualized injunction to follow the arbitration-vindicated Cardmember throughout her travels in interstate commerce, the intensive monitoring of such a RFPA/arbitration-vindicated Cardmember would be antithetical to a host of other privacy safeguards and controls on private surveillance.

Pls. Mot. 24.

This speculative, not to say rhetorical, argument is a pure public policy argument. Plaintiffs overlook the fact that Congress has already enunciated our federal public policy by enacting the FAA.

such "generalized attacks on arbitration that rest on 'suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants'" must be rejected. <u>Randolph</u>, 531 U.S. at 89-90 (citation omitted). Even claims "arising under a statute designed to further important social policies may be arbitrated because 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum' the statue serves its function." <u>Id.</u> at 90 (citation omitted).

In essence, Plaintiffs have presented a policy argument about the limits of arbitration and the prejudicial impact it has on their statutory claims. In passing the FAA, Congress established a "'liberal federal policy favoring arbitration agreements.'" <u>Compucredit Corp.</u>, 2012 WL 43514, at *3 (quoting <u>Moses H. Cone Mem'l Hosp.</u>, 460 U.S. 1 at 24). To invalidate the Arbitration Provision based upon Plaintiffs' policy arguments would undermine this firmly established Congressional policy choice.

For these reasons, the Court concludes that the Arbitration Provision is valid and enforceable under RFPA.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' Motion to Invalidate the Arbitration Restrictions is **denied** and Defendants' Motion to Compel Arbitration is **granted.** An Order will accompany this Memorandum Opinion.[16]


January 31, 2012

/s/_____
Gladys Kessler
United States District Judge

---

[16] The Court has today received from Plaintiffs a Notice, and a Motion to Take Notice, of Supplemental Authority and Notice of Defendants' Waiver of Arbitration and Abandonment of Motion to Compel Arbitration [Dkt. No. 61]. It is difficult, on first reading, to comprehend the nature of their legal argument. In any event, Defendants will have an opportunity to respond.